TONY TOPPS *et al.*, Plaintiffs-Appellees, v. UNICORN INSURANCE
COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 1—93—4315

Opinion filed March 8, 1995.

Gregory R. Spelson, of Moss & Hillison, of Chicago, for appellant.

Arthur H. Levinson, of Spinak, Levinson, Babcock & Iversen, P.C., of Chicago, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Unicorn Insurance Company, appeals the trial court's entry of summary judgment in favor of its insured, Tony Topps, and Rhonda Woods (plaintiffs), a passenger in his vehicle which was struck by an alleged uninsured motorist, arising from a dispute over whether its insurance policy required arbitration of issues involving "coverage" for collisions with uninsured motorists. Defendant argues the trial court erred by: (1) deeming the arbitration provision contained in the insurance policy to be void and unenforceable; and (2) accepting plaintiffs' letter from the Illinois Department of Transportation (IDOT) as evidence of the adverse driver's and vehicle's insurance status.

We affirm.

Defendant issued Topps automobile insurance against uninsured motorists to become effective January 1992. The policy contained a section entitled "Family Protection Coverage (Uninsured Motorist Coverage)" which entitled the insured to damages for bodily injury, as stated in pertinent part:

"[F]or the purposes of this coverage, determination to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

The policy also contained a subsection providing for arbitration:

"Arbitration. If any person making claim hereunder and the company do not agree that both the vehicle(s) and the driver(s) of the vehicle(s) with which any person making claim has had an accident, *were not covered by liability insurance at the time of the accident,* or do not agree that such person is legally entitled to re-

cover damages from the owner or operator of an uninsured automobile because of bodily injury to an insured *** then these matters shall be submitted to arbitration." (Emphasis added.)

In February Topps was driving and Woods was a passenger in the insured vehicle when it was struck by another vehicle, driven by Phillip Hardin in which his wife Lilly was a passenger. The collision caused plaintiffs to sustain bodily injuries. In December plaintiffs demanded arbitration of the insurance claim but refused to submit to arbitration the issue of the driver's or vehicle's uninsured status based upon a letter from the IDOT, which stated it had "no record of receiving a motor accident report or evidence of liability insurance" on behalf of Phillip or Lilly Hardin relating to the collision.

In April 1993 the Secretary of State entered an order after a safety responsibility hearing conducted pursuant to section 7—205(a) of the Illinois Safety Responsibility Law (625 ILCS 5/7—205(a) (West 1992)), at which Topps but neither Hardin was present, finding "there is a reasonable probability of a civil judgment being rendered against Phillip or Lilly Hardin" as a result of the collision, and they have "failed to comply with the requirements of the Illinois Safety Responsibility Law" (see 625 ILCS 5/7—202 (West 1992) (exceptions to requirements as to security and suspension)). Hence, the Secretary ordered suspension of the Hardins' drivers' licenses and driving privileges.

Plaintiffs filed a declaratory judgment action and sought summary judgment which would provide a finding that the Hardins were uninsured at the time of the collision pursuant to the terms of defendant's insurance policy (count I), and that the arbitration provision of the policy is void and unenforceable.

After a hearing, the trial court entered an order finding that the issue of the uninsured status of the adverse driver in an uninsured motorist claim is an issue of "coverage" which must be decided by a court and that the arbitration provision is void and unenforceable. The court also allowed plaintiffs leave to again present their summary judgment motion as to count I.

In August 1993 plaintiffs filed a second motion for summary judgment and attached a copy of the order from the Secretary of State and the letter from the IDOT. In its response, defendant only objected to the IDOT letter as inadmissible hearsay.

At the hearing in November 1993, the court found the letter to be a business record and, based upon the evidence and argument presented, determined the Hardins were uninsured at the time of the collision.

Defendant asserts the issue of whether the Hardins were uninsured at the time of the collision is not an issue of "coverage" for judicial determination but, rather, an element of liability for purposes of the uninsured motorist coverage. Illinois law is clear that issues of liability and damages are proper subjects for arbitration. (See *State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 605 N.E.2d 539.) Defendant argues that since the parties explicitly agreed to arbitrate issues of liability, including the status of the alleged tortfeasor's insurance, the trial court erred by finding the arbitration clause void and unenforceable.

The Illinois Supreme Court interpreted section 143a(1) of the Illinois Insurance Code regarding uninsured motorist coverage (215 ILCS 5/143a(1) (West 1992)) to require arbitration of disputes concerning covered claims "once coverage was established." (*State Farm*, 152 Ill. 2d at 541 (courts, not arbitrators, should determine whether uninsured motorist struck claimant's vehicle on the date alleged).) Based upon the legislative history and the statements of the statute's sponsor, the court determined section 143a(1) was enacted to expedite the arbitration process to avoid submitting every dispute relating to uninsured motorist coverage to arbitration. (*State Farm*, 152 Ill. 2d at 542-43.) To broaden the statute's application to allow arbitration of disputes extending beyond the uninsured motorist's liability and the amount of the insured's damages would also "threaten to eliminate much of the uniformity existing in this area of the law." *State Farm*, 152 Ill. 2d at 543.

■ Contrary to defendant's assertion, the plain language of the arbitration provision requires arbitration of disputes involving issues of coverage rather than an element of liability, *i.e.*, whether the vehicle and the driver involved in a collision with an insured were "*covered* by liability insurance at the time of the accident." (Emphasis added.) Defendant concedes there is "coverage" in this case, but states that the insurance status of the adverse driver and his vehicle is an issue of liability. We disagree. Illinois law is clear that the question of whether a motorist was an insured driver "is relevant to the issue of coverage and must be determined by the trial court before arbitration can proceed." *Elliott v. Inter-Insurance Exchange* (1988), 169 Ill. App. 3d 702, 707, 523 N.E.2d 1086, citing *Clark v. Country Mutual Insurance Co.* (1985), 131 Ill. App. 3d 633, 476 N.E.2d 4; see *Comet Casualty Co. v. Jackson* (1984), 125 Ill. App. 3d 921, 467 N.E.2d 269.

Moreover, adopting defendant's argument would mean that every dispute relating to uninsured motorist coverage would have to be submitted to, and resolved through, arbitration, an argument explicitly rejected by *State Farm*. *State Farm*, 152 Ill. 2d at 542-43

(lists the range of issues that could be determined through arbitration should courts adopt a broader reading of section 143a beyond issues of liability and damages).

Nevertheless, defendant argues that the parties' agreement governs whether to submit an issue to arbitration and the plain language of the arbitration provision calls for arbitration of coverage issues. However, the insurance policy contains conflicting provisions to create an ambiguity which must be resolved in favor of the insured and to comply with existing law. The bodily injury provision remains valid since it grants arbitration of issues to determine whether "the insured or such representative is legally entitled to recover such damages, and if so the amount thereof." However, the provision specifically concerning arbitration improperly adds the insurance status of the alleged tortfeasor to other arbitrable issues in violation of *State Farm.*

Defendant's reliance upon *Jacob v. C&M Video, Inc.* (1993), 248 Ill. App. 3d 654, 618 N.E.2d 1267, for its application of *State Farm* is misplaced. The plaintiffs in *Jacob* cited *State Farm* to support their argument that the interpretation of a franchise agreement was not subject to arbitration. The court rejected the plaintiffs' argument, recognizing *State Farm* held that, absent an explicit statement of legislative intent, arbitration is limited to disputes concerning covered claims only after coverage has been established. (*Jacob*, 248 Ill. App. 3d at 661.) The *Jacob* court thus held that since the Franchise Disclosure Act of 1987 (815 ILCS 705/1 *et seq.* (West 1992)) contained no such limitation, enforcement of the arbitration clause would not be unconscionable. (*Jacob*, 248 Ill. App. 3d at 661.) Moreover, although *Jacob* relied upon *State Farm*'s application of the rule that "the status of an issue as arbitrable is determined from the language of the agreement giving rise to arbitration," the language at issue must not contravene existing law. See *Jacob*, 248 Ill. App. 3d at 661.

Defendant also misapplies *Universal Reinsurance Corp. v. Allstate Insurance Co.* (7th Cir. 1994), 16 F.3d 125, which reversed a prior ruling (*Universal Reinsurance Corp. v. Allstate Insurance Co.* (7th Cir. 1993), 995 F.2d 113) to hold that sophisticated parties which negotiate at arm's length for an arbitration provision which does not offend existing law shall be held to the terms of their agreement even if the failure to comply with the provision is not neglectful. Here, plaintiff certainly was not as sophisticated as defendant, which drafted the insurance policy, and the "agreed-upon" provision improperly attempted to extend Illinois law.

Alternatively, unlike *Universal*, the parties at hand apparently agreed to two arbitration clauses, one which concerns coverage for

bodily injury and limits arbitration to issues of liability and damages, while the provision specifically concerning arbitration adds the insurance status of the alleged tortfeasor to other arbitrable issues.

Defendant also contends it was error to allow into evidence a purported public record because no foundation was established for its admission. The document at issue, stating that the IDOT had no evidence of liability insurance for either Hardin, is written upon IDOT stationary, signed and sworn to by the manager of accident records and bears the official seal of a notary public.

■ Illinois law permits the admission of a governmental business record into evidence if that record was made in the "regular course of any business." (725 ILCS 5/115—5(a) (West 1992).) The prerequisite for admission of a public record as an exception to the hearsay rule is that the record was made in the ordinary course of business and that it is authorized by statute, agency regulation, or is required by the nature of the public office. See *People v. Brown* (1989), 194 Ill. App. 3d 958, 969, 553 N.E.2d 712; *People v. Williams* (1986), 143 Ill. App. 3d 658, 663, 493 N.E.2d 362.

■ Here, the IDOT was authorized by statute to collect written reports from drivers involved in a collision in Illinois. (625 ILCS 5/11—406(a) (West 1992).) Although a witness would have been required to provide a foundation for admission of the IDOT letter,[1] defendant conceded in its "Response to Motion for Summary Judgment" that proving the insurance status of the adverse driver is "a rather simple and uncomplicated issue" and:

> "All that it generally necessitates is a letter from the Illinois Department of Transportation, revealing that the alleged adverse driver did not have insurance on the date of the automobile accident in question *** the issue of the insurance status of the adverse driver is something that can be resolved quickly, easily, and with relatively little effort on behalf of the claimant's attorney."

Taking the defendant at its word, we must construe these remarks as a waiver of the foundational niceties that would surround a letter from the IDOT.

In any event, even if the admission of the IDOT letter was improper, the order from the Secretary of State suspending the Hardins' drivers' licenses, pursuant to the safety responsibility hearing,

---

[1]However, under the business record exception to the hearsay rule, only the business record itself is admissible into evidence rather than the testimony of the witness who makes reference to the record. See *Cole Taylor Bank v. Corrigan* (1992), 230 Ill. App. 3d 122, 129-30, 595 N.E.2d 177.

constitutes reasonable grounds to conclude the Hardins were uninsured motorists for purposes of the insurance policy.

■ Since the trial court has properly determined the Hardins were uninsured at the time of the collision, we expect the case to proceed to arbitration concerning the issues of liability and damages only.

The judgment of the circuit court is affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.